**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMILY BARRY,** | CIVIL ACTION NO. _____ |
| **Plaintiff,** | |
| v. | **JURY TRIAL DEMANDED** |
| **THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,** | |
| **Defendant.** | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Emily Barry, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint"):

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Emily Barry ("Ms. Barry"), a former employee of Defendant Thomas Jefferson University Hospitals, Inc. ("Defendant" or "TJUH"). Ms. Barry has been harmed by Defendant's discrimination and harassment based on her sex, sexual orientation and transgender status/gender identity, and by Defendant's retaliation against her for complaining about discrimination and harassment, culminating in her wrongful termination on May 16, 2023.

2. This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, et seq. ("PFPO").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims and local law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On May 25, 2023, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On December 18, 2024, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims herein, it has been greater than one year since Plaintiff dual-filed her EEOC Charge as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with the claims arose in this judicial district, and Plaintiff was employed by Defendant in this judicial district.

## **PARTIES**

9. Plaintiff Emily Barry is an adult transgender individual who was born biologically male, but identifies as female.

10. Ms. Barry is a citizen and resident of Philadelphia, Pennsylvania and the United States of America.

11. Defendant TJUH is a private, non-profit healthcare organization including multiple hospitals in the Philadelphia area.

12. TJUH has a location at 900 Walnut Street, Philadelphia, Pennsylvania 19107 – Jefferson Hospital for Neuroscience - where Ms. Barry was employed.

13. At all relevant times, Defendant TJUH is and has been an employer employing more than five hundred (500) employees.

14. Defendant TJUH does significant business within the Commonwealth of Pennsylvania and the City of Philadelphia.

15. At all relevant times, employees of TJUH acted as agents and servants for TJUH.

16. At all relevant times, employees of TJUH were acting within the scope of their authority and in the course of employment under the direct control of TJUH.

17. At all times material hereto, TJUH acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with TJUH and in furtherance of TJUH's business.

18. At all times relevant hereto, Defendant is and has been an "employer" and/or "person" within the meaning of the laws at issue in this matter, and is accordingly subject to the provisions of said laws.

19. At all relevant times hereto, Plaintiff Emily Barry was an "employee" within the meaning of the laws at issue in this matter, and is accordingly entitled to the protections of said laws.

20. This Honorable Court has jurisdiction over Defendant.

## FACTS

21. In or about the Summer of 2018, Ms. Barry was hired as a Nursing Extern for TJUH at the Jefferson Hospital for Neuroscience ("JHN").

22. While employed at TJUH, Ms. Barry excelled in her position and performed her duties in an excellent and professional manner.

23. Despite her loyalty and consistent performance, Ms. Barry was subjected to discrimination and harassment on the basis of her sex, sexual orientation, and gender identity/transgender status, and was wrongfully terminated as a result of such discrimination and in retaliation for complaining about the discrimination and harassment.

24. When Ms. Barry was hired and began her employment with TJUH, Ms. Barry went by the name "Matthew" and used the "he/him" pronouns.

25. Shortly into her employment at TJUH, Ms. Barry was subjected to harassment based on her sex (male at the time).

26. In 2019, a female member of the nursing staff, Marissa Athar, was speaking via video with another co-worker who was off of work that day.

27. Ms. Athar then put Ms. Barry on the video, lifted her shirt to expose her bare chest, and stated, "look at these titties!"

28. Also in 2019, Ms. Athar led Ms. Barry into a patient's room in order to place a urinary catheter.

29. She then pointed to the female patient and made an explicit sexual comment, comparing the patient's anatomy to her own.

30. On September 24, 2020, Bryan Voight, a TJUH Registered Nurse, made a sexual comment to Ms. Barry, telling another member of the TJUH nursing staff, Adriana Labella, to sexually penetrate Ms. Barry from behind.

31. Despite Ms. Barry's obvious discomfort and offense with the open sexual harassment, the harassment continued.

32. In 2021, with respect to Ms. Barry's housemate and TJUH Registered Nurse, Hung Lam, Ms. Barry was asked by Daniel Zaborowski, Administrative Charge Nurse, who was the "pitcher" and who was the "catcher," causing Registered Nurse Patrick Becher to laugh.

33. Mr. Becher also engaged in sexual harassment towards Ms. Barry, accusing her of "playing the victim" and making fun of what was perceived to be homosexual behavior.

34. Ms. Barry was then subjected to extreme sexual harassment with respect to her anatomy.

35. In or about April 2021, Ms. Barry realized that a nude photo of herself had apparently been found and circulated amongst the TJUH employees.

36. Maryanne McCarrin, Ms. Barry's Nurse Manager, and Mr. Zaborowski were openly looking at the nude photo of Ms. Barry during a work-related event, making jokes and comments about Ms. Barry's anatomy.

37. On or about June 11, 2021, at a work-related outing, Ms. McCarrin made several explicit comments about the size of Ms. Barry's penis, making comments such as, "you have a big d*ck," encouraging her to become more assertive on the unit, and asking Ms. Barry which of the TJUH employees she was "interested" in.

38. Shortly thereafter, Ms. Barry entered the unit to find that someone had replaced her name on the patient assignment board with the nickname "the Hammer."

39. Ms. Barry also observed a crude drawing of a penis nearby.

40. The "Hammer" nickname was widely used by staff, as several coworkers referred to Ms. Barry as "the Hammer" or directly called her "the Hammer," including Kevin Cristino, who called Ms. Barry "the Hammer" on multiple occasions; Peter Hagendorf, who called Ms. Barry "the Hammer" on multiple occasions, even though Ms. Barry requested that he stop; John Kramer, who called Ms. Barry "the Hammer" on multiple occasions; and Jazmin Wright, who called Ms. Barry "the Hammer" on one occasion in a flirtatious way.

41. On June 14, 2021, Ms. McCarrin told Ms. Barry that a group of oncology nurses was visiting Ms. Barry's patient in order to check out "the Hammer."

42. This offensive and sexually harassing nickname persisted throughout Ms. Barry's employment.

43. Indeed, over a year later, on July 18, 2022, Mr. Zaborowski called Ms. Barry "the Hammer" and referred to her "large c*ck" in front of the staff, and stated that Ms. Barry's patient's female family members wanted to see her genitalia.

44. In fact, Ms. Barry's supervisor, Mr. Zaborowski, called Ms. Barry "the Hammer" at least once a month for the following two years of her employment.

45. On October 8, 2021, Ms. Barry was selected to work in the Neuro Intensive Response Team ("NERT") and was offered training as a Charge Nurse.

46. This spurred on even more sexual harassment.

47. Notably, at a work-related event, Giovanna Bader stated, in front of Andrew Manner, that the only reason that Ms. Barry had the NERT position was because she had a large penis.

48. In addition, while at work, Alexandra Diventura similarly communicated that the reason that Ms. Barry had the NERT position was because Ms. McCarrin liked her in a romantic or sexual way.

49. Bryan Ishmael agreed, stating that Ms. McCarrin "had a thing" for Ms. Barry.

50. Despite her intense and obvious discomfort, Ms. Barry's co-workers and supervisors continued to make inappropriate and offensive sexual comments to Ms. Barry.

51. While at work, in front of coworker Kevin Cristino, Ms. Diventura asked Ms. Barry if she knew what "bukkake" was as Ms. Barry looked away, extremely uncomfortable.

52. In addition, while looking directly at Ms. Barry, Ms. Voigt held up a pediatric blood pressure cuff and said his penis was too large to fit inside of it.

53. On another occasion, Jenny Keckler commented on the size of Ms. Barry's hands, clearly alluding to her penis, repeatedly made derogatory and demeaning remarks regarding a transgender family member's decision to get gender reassignment surgery, and berated a supervisor, John DeAngelis, behind his back for being intersex and not having a penis as a result of a disability.

54. Thereafter, CCT Cheri Williams encouraged the idea of using violent restraints to tie Ms. Barry to a patient bed in front of an extern and a Registered Nurse.

55. In addition, Peter Hagendorf stated that Ms. Barry had a large penis in front of the staff, including Sue Nardone and Katie Curry, using exaggerated dimensions.

56. Jaime Chambon and Andrew Maenner explicitly stated that large penises are disgusting while looking directly at Ms. Barry.

57. And, on several occasions, Tim Laverty attempted to pressure Ms. Barry into taking off her shirt on the unit while taking off his own shirt.

58. On March 29, 2022, Ms. Barry went rock-climbing at an indoor facility with two coworkers, Ms. Wright and Ms. Diventura.

59. Once Ms. Barry continued to frequent the facility alone, she was excluded from social events and treated with apprehension from Ms. Wright and Ms. Diventura.

60. Ms. Barry thereafter apologized to Ms. Wright and Ms. Diventura if she made them feel uncomfortable in some way, and Ms. Wright requested that Ms. Barry maintain her distance, which Ms. Barry agreed to do.

61. Ms. Barry later learned from Ms. McCarrin that Ms. Wright incorrectly believed that Ms. Barry was preoccupied with her, which Ms. Barry clarified was not the case, as she had no romantic feelings for Ms. Wright and Ms. Wright's belief had been based on a misunderstanding.

62. Ms. Barry was then staffed almost exclusively with male nurses.

63. Because it was known that Ms. Barry was bisexual, this discriminatory decision resulted in further apprehension towards Ms. Barry from the female nurses and trepidation from the male nurses.

64. This segregation further seemed to reinforce the false impression that Ms. Barry was some sort of threat to the female employees, despite that Ms. Barry had done nothing other than be a constant recipient of sexual harassment based on her anatomy.

65. Ms. Barry was then stripped of her NERT position and was never trained for the Administrative Charge Nurse position.

66. The above-referenced acts, in addition to causing Ms. Barry significant humiliation, discomfort and anxiety, greatly exacerbated her gender dysphoria.

67. In September 2022, Ms. Barry stated that she was nonbinary.

68. Shortly thereafter, at a work-related event on October 28, 2022, Ms. Barry presented herself in a feminine way for the first time.

69. She faced immediate harassment and discrimination based on her newly expressed sexual identity.

70. Nurse Practitioner Ally Heller stated that "I can't take you people seriously."

71. Ms. Barry was compared to another employee's transgender sister in a demeaning and negative manner.

72. When Ms. Barry admitted her struggle regarding her gender identity, she was told to take antidepressants.

73. In addition, Ms. McCarrin approached Ms. Barry towards the end of the party and asked if she could "take [Ms. Barry] home" after several hours of unsolicited and unwanted flirting and physical contact.

74. Ms. Barry declined.

75. The discrimination and harassment intensified after Ms. Barry's presentation as a female and refusal to accede to Ms. McCarrin's sexual requests.

76. Less than two weeks after the work-related event, on November 8, 2022, Ms. Barry was given her first warning.

77. The warning was based on charting deficits that were due to IT-related issues and the issuance of a warning in such circumstances was not standard practice.

78. In giving the warning, Ms. McCarrin did not provide any constructive feedback, and instead strongly encouraged Ms. Barry to leave the unit.

79. Due to the unjustified warning and the lack of any feedback, Ms. Barry articulated that she was feeling discriminated against and retaliated against because she had come out as transgender and because she had declined her manager's sexual advances.

80. On December 13, 2022, Ms. Barry came out as non-binary on social media, using the name MB, with they/them pronouns.

81. Ms. Barry informed several nurses of the change directly and changed her name on the patient assignment board to MB.

82. The discrimination and harassment intensified thereafter.

83. The charge nurse, Patrick Becker, after observing Ms. Barry's name change on the board, asked Ms. Barry if everything was okay in a demeaning tone.

84. On her next shift, Ms. Barry was again placed in a different unit with only male nurses.

85. On this shift, Ms. Barry was intentionally observed by a transgender staff member, apparently to assess her behavior in a gatekeeping manner, which made Ms. Barry extremely uncomfortable.

86. Ms. Barry then changed her name to MB on the whiteboard, indicating that this was the name she preferred to go by.

87. This change prompted a nurse to immediately leave the unit and communicate with the charge nurse, Susan Henderson, who came down to the unit to maliciously state, "look at all these men!"

88. Critical Care Transport ("CCT") Cheri Williams then proceeded to misgender and deadname Ms. Barry.

89. Two weeks later, on December 27, 2022, Ms. Barry officially came out as transgender and non-binary to the entire unit via email, stating that she preferred the name MB with they/them pronouns.

90. However, Ms. Barry was consistently misgendered and deadnamed by several coworkers and supervisors, including the following: Ms. Barry was misgendered and deadnamed multiple times by nurse Tiny Bechtel, with Ms. Bechtel asking: "where is Matt?"; Ms. Barry was misgendered and deadnamed by charge nurse Patrick Becker while Mr. Becker said to Ms. Barry, "what is wrong with you?" Ms. Barry was misgendered and deadnamed several times by other nurses, including Peter Hagendorf, Alex Devera, Kevin Christino and supervisor John Deangelis, despite multiple corrections, and Ms. Barry was misgendered and/or deadnamed by numerous other nurses as well, including Hung Lam, Lee Markovitz, Jessica Houser, and Jen Anderson.

91. On March 13, 2023, Ms. Barry officially came out on social media as Emily, with she/her pronouns.

92. The very next day, Ms. Barry was deadnamed again several times by nurses and other staff, at which point Ms. Barry reiterated her gender identity.

93. Mr. Zaborowski, the Administrative Charge Nurse, then called Ms. Barry a "man," refused to use gender-appropriate language, and resisted any change in Ms. Barry's gender expression.

94. Ms. Barry's other administrative charge nurse, Jessica Houser, asked several intrusive questions about the surgeries and encouraged Ms. Barry to leave the unit, referring to another transgender individual and stating that it would be better to leave and "transition elsewhere."

95. When Ms. Barry attempted to correct the unit office secretary, Karen Eliasen, for incorrectly calling her "Matthew," Ms. Eliasen seemed angered by the interaction.

96. The next day, on March 15, 2023, Ms. Barry reiterated in person her gender identity, and was subsequently deadnamed and misgendered by CCT Brandon Battle.

97. In correcting Mr. Battle, Ms. Barry was told by her charge nurse to be more self-aware.

98. Another nurse, Jenny Keckler, sought to avoid Ms. Barry entirely after she came out as Emily.

99. The days that followed demonstrated that TJUH refused to accept or acknowledge Ms. Barry's gender identity, and that it would only persist in discrimination and harassment based on Ms. Barry's gender identity.

100. On March 20, 2023, nurse Maria Marcolongo called Ms. Barry "sir" and deadnamed her, refusing to correct herself, and questioned Ms. Barry as to "how far" she was planning to go.

101. On April 6, 2023, Ms. Barry was given her second warning, which was allegedly based on clinical events that had occurred on March 14, 2023.

102. It was clear that Ms. Barry was being targeted for termination, as the write ups and termination warnings were based on minor and insignificant issues.

103. Due to the persistent harassment and discrimination that was increasing in intensity since Ms. Barry's announcements, on April 13, 2023, Ms. Barry went to Human Resources and made a complaint of discrimination, harassment, and retaliation.

104. In her complaint, Ms. Barry detailed the numerous acts of sexual harassment and discrimination based on her sexual orientation and gender identity, and complained of retaliation for opposing her manager's sexual advances and for her prior complaint of discrimination and harassment.

105. Ms. Barry was advised to take a short leave of absence.

106. Although Ms. Barry did work a few shifts after her complaint to Human Resources, she then took a week-long vacation, with the intent to return to work on May 3, 2023.

107. However, on May 2, 2023, Ms. Barry received a call from Dennis Caliguri, Vice President of Nursing, who told Ms. Barry not to come in to work the following day.

108. On May 3, 2023, Ms. Barry received a call from Human Resources to schedule a meeting with Mr. Caliguri on May 4, 2023.

109. The next day, Ms. Barry spoke with Mr. Caliguri.

110. However, the conversation did not address or even touch upon any of the issues raised in Ms. Barry's complaint of discrimination, harassment and retaliation; instead, the entire conversation focused on questions about patients.

111. Mr. Caliguri mentioned a possible follow up discussion on May 5, 2023, but that conversation did not occur.

112.     On May 16, 2023, only one month after complaining to Human Resources of the harassment, discrimination, and retaliation she had been subjected to (and not having worked the majority of that time), Ms. Barry was terminated.

113.     Defendant discriminated against and harassed Ms. Barry because of her her sex, sexual orientation, and gender identity/transgender status, and retaliated against Ms. Barry because of her complaints about discrimination and harassment in violation of Title VII, the PHRA and the PFPO.

114.     Defendant willfully violated Title VII, the PHRA and the PFPO, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated the statutes.

115.     As a result of the discrimination, harassment, retaliation and other wrongful conduct perpetrated against Ms. Barry by TJUH, Ms. Barry has suffered significant financial losses including, among other things, loss of employment and loss of wages.

116.     Ms. Barry has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and/or inactions of Defendant.

117.     Defendant and its agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Ms. Barry to suffer emotional distress.

118.     As a result of the Defendant's conduct described herein, Ms. Barry has incurred a significant obligation for attorneys' fees and costs of bringing this action.

## COUNT I
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), <u>et seq.</u>**

119.     Plaintiff Emily Barry repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

120. Based on the foregoing, Defendant TJUH engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

121. In discriminating against and harassing Ms. Barry because of her sex, sexual orientation and gender identity/transgender status, and in retaliating against Ms. Barry for her complaints of discrimination and harassment, Defendant violated Title VII.

122. Defendant's violations were intentional and willful.

123. Defendant's violations warrant the imposition of punitive damages.

124. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant TJUH, Plaintiff Emily Barry has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

125. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT II
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

126. Plaintiff Emily Barry repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

127. Based on the foregoing, Defendant TJUH has engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

128. In discriminating against and harassing Ms. Barry because of her sex, sexual orientation and gender identity/transgender status, and in retaliating against Ms. Barry for her complaints of discrimination and harassment, Defendant violated the PHRA.

129. As the direct and proximate result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

130. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III
### Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, et seq.

131. Plaintiff Emily Barry repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

132. Based on the foregoing, Defendant TJUH has engaged in unlawful employment practices in violation of the PFPO.

133. In discriminating against and harassing Ms. Barry because of her sex, sexual orientation and gender identity/transgender status, and in retaliating against Ms. Barry for her complaints of discrimination and harassment, Defendant violated the PFPO.

134. As the direct and proximate result of Defendant's violations of the Philadelphia Fair Practices Ordinance, Plaintiff has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

135. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

136. Plaintiff Emily Barry repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Emily Barry respectfully requests that this Court enter judgment in her favor and against Defendant TJUH and Order:

a. Appropriate equitable relief including reinstatement or front pay;

b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendant to pay Plaintiff punitive damages;

e. Defendant to pay Plaintiff liquidated damages;

f. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g. Defendant to pay Plaintiff's costs of bringing this action and her reasonable attorneys' fees;

h. Plaintiff be granted any and all other remedies available pursuant to Title VII, the PHRA, and the PFPO; and

    i.   Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Emily Barry hereby demands trial by jury as to all issues so triable.

                                                        By: */s/ Christopher A. Macey, Jr.*
                                                                  Christopher A. Macey, Jr., Esquire
                                                                   Bell & Bell LLP
                                                                   1617 John F. Kennedy Boulevard
                                                                   Suite 1254
                                                                   Philadelphia, PA 19103
                                                                   (215) 569-2500

                                                                   *Attorneys for Plaintiff*
                                                                   *Emily Barry*

Dated: March 17, 2025